**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **USIEL REYNA MESA,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-26-775-J** |
| ) | |
| **FRED FIGUEROA, et al.,** ) | |
| ) | |
| **Respondents.** ) | |

**REPORT AND RECOMMENDATION**

Petitioner Usiel Reyna Mesa, a noncitizen[1] and Mexican national proceeding with

counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under

28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE").

United States District Judge Bernard M. Jones, II referred this matter to the undersigned

Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The

undersigned set an expedited briefing schedule and the Petition is at issue. Doc. 7. For the

reasons set forth below, the undersigned recommends that the Court grant the Petition,

Doc. 1, for habeas relief by ordering Respondents to release Petitioner subject to the

conditions of his prior parole.

**I.     Background**

Petitioner, a citizen of Mexico, was admitted to the United States in 2023 on a B1/B2

nonimmigrant visa. Pet. at 18; Doc. 1-1 at 3 (Petitioner's Border Crossing Card). On

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

November 9, 2023, Petitioner was adopted by a United States citizen.  Pet. at 18; Doc. 1-1 at 11-14 (Decree of Adoption of an Adult).  In November 2023, before the expiration of Petitioner's authorized stay pursuant to his visa, he briefly left the country.  Pet. at 18.  On November 27, 2023, Petitioner re-entered the United States and presented himself for inspection at the Del Rio, Texas Port of Entry.  *Id.*; Resp. at 14.  At that time, Petitioner was questioned by immigration authorities and designated as an "arriving alien."  Resp. at 15; Doc. 1-1 at 16 (Notice to Appear).

On January 8, 2024, Petitioner was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5) and released from ICE custody.  Pet. at 19; Resp. at 15; Doc. 1-1 at 19 (Notice Authorizing Parole).  Petitioner's parole was valid until January 8, 2025, and the Notice Authorizing Parole informed him that his parole "will automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period unless ICE provides [him] with an extension at its discretion."  Doc. 1-1 at 19; Resp. at 15.  Petitioner alleges he was fully compliant with all requirements imposed by immigration authorities during his release, including attending ICE check-in appointments.  Pet. at 19.

On January 9, 2024, ICE formally placed Petitioner into removal proceedings before the Immigration Court through the issuance of a Notice to Appear ("NTA"), and charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i) as someone not in possession of valid entry documents.  Pet. at 18; Resp. at 15; Doc. 1-1 at 16.  Later in 2024, Petitioner filed an Application for Asylum and for Withholding of Removal.  Pet. at 19; *see also* Doc. 1-1 at 33-34 (confirming Petitioner's application for asylum).

On March 13, 2026, ICE re-detained Petitioner pursuant to an arrest warrant while voluntarily appearing for a scheduled check-in appointment.  Pet. at 19; Resp. at 15; Doc. 12-2 (Arrest Warrant dated March 13, 2026).  Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1).  Resp. at 11.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma.  Pet. at 6; Doc. 1-1 at 31 (ICE Locator at the time of filing). He remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited June 18, 2026).

## II.    **Petitioner's Claims**

Petitioner asserts seven counts in his Petition.

- **Count I: Mandatory Detention is Ultra Vires.**  Petitioner alleges his mandatory detention exceeds the statutory power Congress delegated, when he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a). Pet. at 32-40.

- **Count II: Violation of the Fourth Amendment**.  Petitioner alleges his warrantless arrest violates the Fourth Amendment.  *Id*. at 40-44.

- **Count III: Violation of the Due Process Clause.**  Petitioner alleges his re-detention without an individualized determination of danger to the community or flight risk violates his substantive and procedural due process rights.  *Id.* at 44-59.  Petitioner also alleges his re-detention "without any allegation of violation, change in circumstances, or individualized determination of necessity" deprived him of his protected liberty interest and due process "despite his consistent adherence to all requirements imposed by the government." *Id.* at 20-23.

- **Count IV: Violation of the Administrative Procedure Act ("APA").**  Petitioner alleges the Department of Homeland Security ("DHS") violated the APA because it acted arbitrarily and capriciously by continuing to detain him without an individualized custody assessment.  *Id.* at 59-62.

- **Count V: Violation of the Equal Protection Clause.** Petitioner alleges ICE's decision to detain him subject to 8 U.S.C. § 1225(b), despite longstanding practice to provide similarly situated noncitizens a bond hearing, creates an unjustifiable disparity between him and similarly situated individuals in violation of the Equal Protection Clause. *Id.* at 62-67.

- **Count VI: Violation of the Suspension Clause**. Petitioner alleges his prolonged detention "wholly insulated from individualized review" implicates the protections of the Suspension Clause, which forbids the government from implementing a detention scheme that eliminates all meaningful opportunity for detainees to test the legality of his ongoing confinement. *Id.* at 67-70.

- **Count VII: Violation of the *Accardi* Doctrine.** Petitioner alleges Respondents failed to follow their own mandatory regulations related to immigration-specific arrests and processing when ICE arrested him without a warrant, which renders the actions unlawful. *Id.* at 70-73.

He asks the Court to "grant the writ of habeas corpus and order his immediate release from ICE custody under no more restrictive conditions than those that existed prior to his detention" or, alternatively, "order that this Court conduct its own prompt, constitutionally adequate, and individualized bond determination within seven (7) days of the Court's order, at which the Government shall bear the burden of proving, by clear and convincing evidence, that continued detention is necessary to serve a legitimate governmental purpose and that no less restrictive alternatives would suffice." *Id.* at 74. Petitioner also seeks injunctive and declaratory relief, *id.* at 73-75, and an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA"),[2] *id*. at 75.

---

[2] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

4

III.    **Standard of Review**

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

IV.    **Analysis**[3]

A.    **The Court has jurisdiction to consider Petitioner's claims.**

As an initial matter, Respondents assert Petitioner's challenge to the DHS decision to terminate his parole is jurisdictionally barred.  Resp. at 19-20.  Specifically, Respondents allege 8 U.S.C. § 1252(a)(2)(B)(ii) "bars judicial review of certain discretionary decisions of the Attorney General" and "§ 1182(d)(5) clearly vests discretion in [the] Secretary of Homeland Security, permitting termination of parole when, in the opinion of the Secretary of Homeland Security, the purposes have been served."  Resp. at 20 (citation modified).

The Court should find that it has jurisdiction because Petitioner does not challenge any discretionary decision to terminate his parole.  Rather, he argues Respondents arbitrarily re-detained him without any alleged violation of conditions or change in circumstances justifying his re-detention, in violation of his due process rights.  Thus,

---

[3] Petitioner claims he was not required to exhaust administrative remedies before filing the Petition.  Pet. at 8-17.  Respondents do not dispute Petitioner's assertion.  The undersigned agrees that Petitioner was not required to exhaust before filing the Petition.  *See Soberanes*, 388 F.3d at 1310 (holding exhaustion requirements do not apply to challenges to immigration detention brought in habeas proceedings).

Petitioner is not challenging Respondents' discretionary decision to re-detain him because "the purposes [of his parole] have been served" but that Respondents arbitrarily and improperly re-detained him *without* making any such discretionary determination or following their own procedures for re-detaining him. *See* Pet. at 20-23; *see also Mukantagara v. Noem*, 164 F.4th 765, 771-72 (10th Cir. 2026) (concluding § 1252(a)(2)(B)(ii) does not prohibit a court's review of a "nondiscretionary first step" about an eligibility determination that must precede a discretionary decision); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

Accordingly, the Court has jurisdiction here to consider Petitioner's challenge to "the adequacy of a procedural precedent to a discretionary decision." *Alcide v. de Anda-Ybarra,* No. 26-CV-00249, 2026 WL 622663, at *3 (D.N.M. Mar. 5, 2026); *see id.* (citing *Mukantagara* and holding the court has jurisdiction to review petitioner's claim his § 1182 parole was improperly revoked because "Petitioner challenges the procedural adequacy of his parole termination, not the decision itself"); *Y-Z-L-H*, 792 F. Supp. 3d at 1141 (holding § 1252(a)(2)(B) "do[es] not preclude this District Court from reviewing whether the decision to terminate Petitioner's parole was lawful"); *see also Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1623419, at *3 (W.D. Okla. Apr. 17, 2026) (recommending the Court find it has jurisdiction to consider the legality of petitioner's detention and recommending release because Petitioner's due process was violated when respondents

6

improperly revoked petitioner's parole) (R&R), *adopted*, No. CIV-26-320, 2026 WL 1207088 (W.D. Okla. May 4, 2026).[4]

### B.     Petitioner's re-detention violated ICE regulations.

First, the Court must determine what regulations govern Petitioner's parole—and its subsequent revocation—under 8 U.S.C § 1182. Individuals conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954). Pertinent here, "the statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99 (citation modified).

Petitioner presented himself for inspection at the border in November 2023, and immigration officials subsequently paroled him into the United States under 8 U.S.C. § 1182(d)(5). Pet. at 18-19; Resp. at 15. This section grants discretion to DHS officials to

---

[4] Additionally, district courts in other Circuits have held 8 U.S.C. § 1252 only strips jurisdiction for judicial review relating to final orders of removal and not challenges to detention before the issuance of such an order. *See, e.g., Kirboga v. LaRose*, 819 F. Supp. 3d 1137, 1149 (S.D. Cal. 2025) ("Where a petitioner 'does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008))); *accord* 8 U.S.C. § 1252 (titled "Judicial review of *orders of removal*" (emphasis added)).

"parole into the United States temporarily under such conditions as [the DHS Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Humanitarian parole may be terminated in two ways.  First, parole terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized."  8 C.F.R. § 212.5(e)(1).  With automatic termination of parole, no written notice is required.  *Id.*  Second, if parole is not terminated automatically, revocation of parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States."  *Id.* § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served").  And, in this case, parole will only be terminated when "written notice" of this decision is served on the noncitizen.  8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or on notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered shall be executed."  *Id.*  "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody."  *Id.*  Accordingly, unless detention is required for the timely removal of a noncitizen, continued detention following earlier release on parole must be supported by an individualized assessment by an authorized DHS

official. Otherwise, implementing regulations require that a noncitizen be released again to humanitarian parole. *See, e.g., Erwin M.L. v. Warden of the Mesa Verde ICE Processing Ctr.*, No. 26-CV-01049, 2026 WL 1256421, at *4 (E.D. Cal. May 7, 2026) ("The parole scheme . . . requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying a parolee's detention."); *Caisa Telenchana v. Hermosillo*, No. 26-CV-363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) ("The applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply.") (citation modified).

Respondents argue 8 U.S.C. § 1225(b)(1) governs Petitioner's detention because he presented himself at the border and was released on parole. Resp. at 16-19.[5] However, Respondents fail to substantively address Petitioner's claim that they revoked his parole without notice or a reasoned decision demonstrating changed circumstances to warrant his

---

[5] While Respondents allege Petitioner remains an "arriving alien" more than two years after he was released on parole and more than a year after that parole expired, this Court has held otherwise. *See Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla. Apr. 7, 2026) (citing *Khubiev v. Baltasar*, No. 25-CV-03955-STV, 2026 WL 864237, at *5 (D. Colo. Mar. 30, 2026)). To the extent Respondents rely on *Baca-Prieto v. Guigni*, 95 F.3d 1006, 1011 (10th Cir. 1996), that case is "distinguishable" from *Khubiev* and "does not render Petitioner subject to detention under § 1225(b)(1)." *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026).

detention.[6]  Further, Respondents do not address the fact that Petitioner's parole was only authorized until January 8, 2025.  *See* Doc. 1-1 at 19.[7]

Based on the record evidence, Respondents violated their own regulations when they revoked Petitioner's parole without notice of a reasoned decision for the revocation. *See, e.g.*, *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of [petitioner's] parole; nor do they articulate, even now, either that the purpose for which [petitioner's] parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *Y-Z-L-H*, 792 F. Supp. 3d at 1137-38 ("This is a grant of discretionary

---

[6] Respondents' sole argument to Petitioner's claim that his § 1182 parole was improperly revoked is that this Court does not have jurisdiction to review the government's discretionary decision to revoke his parole.  Resp. at 19-20.  As already discussed, however, the undersigned concludes the Court does have jurisdiction.  *See supra*, Section IV.A.

[7] Expiration of Petitioner's parole does not justify his re-detention because his continued detention following earlier release on parole, even when expired, must be supported by an individualized assessment by an authorized DHS official.  *See Abdurakhmonov v. Grant*, No. CIV-26-277-SLP, 2026 WL 1166459, at *3 (W.D. Okla. Apr. 29, 2026) (R&R) (concluding respondents "cannot rely on the automatic termination cause to justify Petitioner's parole revocation," and recommending release subject to the conditions of petitioner's earlier parole); *see also Arce Padilla v. Mullin*, No. 26-CV-270, 2026 WL 1245462, at *4 (D. Nev. May 6, 2026) ("Here, DHS's failure to detain [petitioner] upon the expiration of his parole effectively continued [petitioner's] parole status.").  This is especially true in circumstances, like here, where Petitioner was detained while voluntarily attending a regularly scheduled ICE check-in appointment on March 13, 2026—more than one year after his parole initially expired.  *See* Pet. at 15.

10

authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### C.     Respondents violated Petitioner's due process by improperly revoking his parole.

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.   It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen.[8]  *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the

---

[8] Respondents also rely on *Demore v. Kim*, 538 U.S. 510 (2003) to contend "mandatory detention pending removal proceedings does not violate due process." Resp. at 28.  The Supreme Court in *Demore*, though, did not create a blanket rule permitting detention of noncitizens without individualized review and left open the question whether detention violates due process. *See Merchan-Pacheo v. Noem*, No. 25-CV-03860, 2026 WL 88526, at *4-6 (D. Colo. Jan. 12, 2026) (concluding *Demore* "created a framework that *permits* Petitioner's release" and "in no way suggests that the court should decline to consider the *Mathews* factors").

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. "When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sep. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "noncitizens acquire a liberty interest once released from

immigration detention").[9]    Upon re-detention, Respondents deprived Petitioner of his protected status when they revoked his parole and placed him in custody.

All three *Mathews* factors weigh in favor of Petitioner.  First, Petitioner has a significant private interest in remaining free from detention after spending years on parole. He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) in January 2024, and he established himself in the country, including "residing with his adoptive father, maintaining a stable living arrangement and community ties" as well as obtaining employment authorization.  Pet. at 18-19.  During this time, his interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  Further, "Petitioner's liberty interest does not evaporate when a term of parole expires."  *Juan Carlos V.B. v. Chestmut*, No. 26-CV-03077, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, No. 26-CV-00358, 2026 WL 837109, at *5 (D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations").  Accordingly, the first *Mathews* factor favors Petitioner.

Second, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has not received any notice of the reason for his parole revocation

---

[9] The Due Process Clause does not provide noncitizens a liberty interest in being released on parole.  *See Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001).  However, noncitizens are entitled to the process provided in a statute and/or regulations.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).  And, as discussed, Petitioner was entitled to notice and an individualized termination under ICE's own regulations when his parole continued after its initial expiration.  *See* 8 C.F.R. § 212.5(e).

and simple procedures exist that would mitigate those risks.  "Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient."  *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026) (R&R), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026).  Petitioner received no procedural safeguards to determine whether the revocation of his parole and his detention were justified, and thus Respondents have detained him without any stated cause.  This factor also weighs in Petitioner's favor.  *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court must consider the Government's interest, including any fiscal or administrative burdens.  *Mathews*, 424 U.S. at 335.  While a district court "recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low."  *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *Khudaev v. Blanche* No. 25-CV-01291, 2026 WL 1602029, at *10 (D.N.M. June 4, 2026) (finding "Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner written notice").  And the undersigned

14

can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations, especially given Petitioner's detention was not deemed necessary for more than two years. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation.").

Accordingly, Respondents revocation of Petitioner's parole in violation of their own regulations violates his right to due process.

### D.     The proper remedy is release.

Consistent with Chief Judge Palk's recent approach with a similarly situated petitioner, the undersigned recommends the Court order Petitioner's release subject to the conditions of his prior parole under § 1182(d)(5). *See Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at *2 (W.D. Okla. May 4, 2026) (directing respondents "to immediately release Petitioner, subject to the conditions of his prior parole issued under 8 U.S.C. § 1182(d)(5)" and enjoining respondents "from re-detaining Petitioner unless, prior to such re-detention, Petitioner is provided with written notice and a pre-deprivation hearing before a neutral decision maker"); *see also Khudaev*, 2026 WL 1602029, at *10 (holding "the appropriate remedy is release" where petitioner's due process was violated when his § 1182 parole was improperly revoked).

### E.     The Court should decline to address Petitioner's remaining claims.

Petitioner also raises additional claims alleging his continued detention without a bond hearing violates the INA, due process, the APA, the Equal Protection Clause, the

15

*Accardi* doctrine, and the Suspension Clause.  Pet. at 32-40, 44-73.[10]  If the Court adopts

the undersigned's recommendation that Petitioner be released because his due process

rights were violated when Respondents improperly revoked his parole, the Court should

decline to decide the merits of Petitioner's remaining claims because, at most, he would

only be entitled to lesser relief in the form of a bond hearing.  *Accord Coreas v. Noem*, No.

CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026) (declining to decide

the merits of a petitioner's additional due process claim when adopting the recommended

relief of a bond hearing pursuant to § 1226(a)).

## V.      **Recommendation and Notice of Right to Object**

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the

Petition for habeas relief by ordering Respondents to release Petitioner subject to the

conditions of his prior parole.  The parties are advised of their right to object to this Report

and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed not later than

**June 25, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond

to the other party's objections, such response must be filed not later than **June 30, 2026**.

*See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review

---

[10] Petitioner also alleges his warrantless arrest violates the Fourth Amendment.  Pet. at 40-44.  However, Respondents provided the warrant.  Doc. 12-2.  Further, Petitioner's Fourth Amendment claim is likely not cognizable in habeas because "[h]abeas has traditionally been a means to secure *release* from unlawful detention," *Thuraissigiam*, 591 U.S. at 107, while "suppression of evidence is the typical remedy" "[f]or a Fourth Amendment violation," *Kanda v. Cole*, No. 26-CV-158, --- F. Supp. 3d ---, 2026 WL 1014400, at *4 (S.D. Tex. Apr. 10, 2026).

of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 18th day of June, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE